NEW EBENEZER ASSOCIATION *et al. v.* GRESS LUMBER CO.

89   125
92   664
89   125
s100   89
s106   210
89   125
d111   447
89   125
e125   444

1. Where the claim of lien by a material man, as made out and recorded and as declared upon in the petition to foreclose the same, sets up that it was recorded within three months after the materials were furnished, the recorded claim is not inadmissible as evidence on the trial of the petition to foreclose merely because some of the items in the account bear date more than three months before the date of recording, the last items of the account not being dated at all. Parol evidence would be receivable to show when the materials embraced in these undated items were actually furnished; and if the whole bill was covered by one and the same contract, the record would be in time if made within three months after the latest item was furnished.

2. Where a building committee representing an unincorporated religious association consists of five members, authority to make binding contracts in behalf of the committee would have to be exercised by a majority of the members, either directly or by delegating the power to a less number. One member alone could not contract without being authorized so to do by a majority. This authority might be express or implied, but the burden of proving that it was actually conferred would be on the party asserting the validity of the contract. If the authority were assumed, and afterwards the exercise of it ratified by a majority, the result would be the same as if it had been conferred originally; but no ratification would suffice unless it was attended with knowledge of all the material facts, or was made under circumstances from which such knowledge might fairly be presumed.

3. The building committee having employed a contractor to furnish materials and construct the edifice, as one complete undertaking, a material man who delivered materials to the contractor for use in erecting the building and which were so used by him, would have, after duly recording his claim, a lien upon the building and premises for the price of such materials, if they were sold to the contractor and the committee jointly, or if they were sold to the committee alone; but if they were sold to the contractor alone, there would be no lien unless written notice was given thereof to the committee as required by section 1979 of the code.

4. If a majority of the committee neither contracted with the material man for the lumber nor authorized any member of the committee to do so, nor had any knowledge that he had done so, no ratification by them of his unauthorized contract would result from allowing the materials to be used by the contractor and incorporated in the building, inasmuch as such use of them might fairly be referred to the undertaking of the contractor by his ex-

isting contract with the committee, which bound him to furnish the materials as well as to construct the building.

5. Under the act of October 29th, 1889, construed according to the letter, as therein required, a defendant sued jointly with an administrator of a deceased person is not an incompetent witness to testify in behalf of the plaintiff as to a transaction between the plaintiff and the deceased, though the witness was also a party to the transaction and may have an interest in charging the administrator as such with liability in the pending suit.

6. An offer to pay fifty cents on the dollar, unless made by a majority of the committee, would be inadmissible in evidence, but if made by a majority and not with a view to a compromise, it would be admissible. If a fair construction of it would refer it to an effort to compromise, it should be excluded. In the present case this question, on the facts, is left doubtful.   *Judgment reversed.*

March 26, 1892.  Argued at the last term.

Liens. Material men. Evidence. Ratification. Religious associations. Before Judge ROBERTS. Pulaski superior court. May term, 1891.

This case was before this court at the March term, 1890, and will be found reported in 85 *Ga.* 587. In that report appears a sufficient statement of the pleadings of plaintiff. This court there held that the court below erred in refusing an amendment, and in sustaining the demurrer to the plaintiff's petition. Afterwards the amendment which had been rejected was made. The defendants pleaded not indebted; that they were not liable to plaintiff; never contracted or promised to pay the claim sued on; and the statute of frauds. Some of the defendants pleaded not indebted; that they never contracted with plaintiff to furnish lumber or material, and never authorized any one to do so for them; that they knew nothing of the contract for furnishing it; that at the time alleged they or either of them were not trustees of the association and were not in any way responsible as trustees or individuals for the debt; that at the time alleged in the declaration they did not represent a building committee of the association in manner and form as charged, and were not liable in any capacity.

One of defendants, who had been made party as administrator of an original defendant, pleaded *plene administravit*. By amendment it was pleaded that the debt, the subject-matter of the suit, was the individual debt of O'Brien who was the contractor to erect the building in question; and that defendants were in no way liable for the contracts, debts or default of O'Brien, having never agreed to become responsible for the same, but it was distinctly understood that the same was his debt. He made no defence and was not represented by counsel; all the other defendants were so represented, and filed pleas. There was a verdict for plaintiff for the sum sued for, and that the lien claimed be sustained and established "on the building and lands in dispute, and that the same be sold and so much of the proceeds as may be necessary be applied to the payment of plaintiff's said debt." Exceptions were taken to the following rulings:

1. Plaintiff introduced the original claim of lien, which showed that it was recorded on April 14, 1886. Defendants objected to its introduction, on the ground that it was not recorded until April 14, 1886, and some of the items on the bill of lumber sued on and for which the lien was claimed showed that more than three months had elapsed before the recording of the lien. The court overruled the objection and allowed the lien to go in for all the items on the account.

2-4. The court gave the following instructions in charge:

"Now if you believe that the plaintiff furnished the material, as alleged in his declaration, to the defendant, and in doing so he complied with all the terms of the statute just read to you, then you should find a verdict sustaining the plaintiff's lien.

"It is contended by the defendants that the New Ebenezer College is not responsible for said debt, because

they made a contract with O'Brien to build the college and that, by the terms and conditions of the said contract, said O'Brien assumed the liability of paying for all of the material necessary to build the said college, that said defendants had paid said contractor for all the said material.

"I charge you that if you believe from the evidence, that the material was furnished to the contractor and the same was used in the construction of the college, with the knowledge and consent of the defendants who were superintending the construction of the building, then I charge you that the building would be subject to the plaintiff's lien, provided the plaintiff had a lien under the law I have given you in charge.

"I charge you, if O'Brien built the college, purchasing the material in controversy from plaintiff under circumstances from which the law would infer a lien, and that one of the defendant's agents went with O'Brien and instructed the plaintiff to let him have the lumber and they, the defendants, would pay for it, and the lumber was actually furnished, then the college would be liable.

"If you believe that one of the building committee appointed by the college, went with the contractor and told the plaintiff to let him have the lumber and they, the defendants, would see the same paid for, then I charge you that the property would still be subject, as such instructions would show notice and dispense with notice necessary to preserve the lien given by the statute, and this would be true notwithstanding the committeeman had no authority to have made such a contract, provided the contract was subsequently ratified by the use of the material in the building.

"It does not make any difference to the existence of the lien that the defendant may have paid off the debt sued on, or that they have made a contract with O'Brien by which O'Brien may have, under his building con-

tract, tried to release them from any liability to pay for the material furnished in the construction of the college.

"The lien given under the law that I have read you is a right given to a favored set of creditors, and when it exists, by a full compliance with the terms of the statute, could not be defeated by the owners of the property paying the contractor for the material furnished, or by an assumed liability to pay for such material by the contractor, the material man not consenting thereto."

5. O'Brien was introduced as a witness, and counsel for the other defendants objected to his testifying as to what Wright, the dead defendant, said when he went with O'Brien to Gresston to see about getting the lumber, on the ground that as Wright was dead and the interest of the other defendants was antagonistic to O'Brien who, they averred by their pleas, was the real debtor to plaintiff, it being his individual debt for which no one else was responsible, he was an incompetent witness. The objection was overruled and O'Brien was permitted to testify as to what Wright had said about paying for the material and becoming responsible for the payment. Defendants also objected to Gress, the president of plaintiff, testifying as to what O'Brien said to him about defendants paying for the lumber, on the ground that it was illegal, and because O'Brien was one of the defendants making no defence, and O'Brien's statements to witness should not be permitted to bind the other defendants, especially as Wright, who was the only other defendant present at the time besides O'Brien, was dead. The objection was overruled.

6. Defendants moved to rule out the testimony of one Williams, as to the offer by Mayer, one of the defendants, to pay fifty cents on the dollar, on the ground that it was in the nature of a compromise and was inadmissible. The objection was overruled. The testi-

v 89 9

mony was, that some time in March, 1886, Mayer said in the presence of Walker and Mullis, two of defendants, that if O'Brien would pay the account of one Henley, the building committee would pay the account of the Gress Lumber Company; that witness went to see them several times after that, and after O'Brien had paid Henley, and they refused to pay the account in full, but offered to pay fifty cents on the dollar; that these parties were acting as the building committee and had charge of the building of the college; that Walker and Mayer spoke of increasing their subscription and paying it out of their own pocket; and that Mayer, as one of the building committee, made the offer to pay fifty cents on the dollar, which was refused.

MARTIN & SMITH and A. C. PATE, for plaintiff in error.
DeLACY & BISHOP and M. T. HODGE, contra.